OPINION
{¶ 1} Although originally placed on our accelerated calendar, we have elected, pursuant to Local Rule 12(5), to issue a full opinion in lieu of a judgment entry. Defendant-Appellant Julie McCafferty ("Julie") appeals from the February 26, 2007 Judgment Entry and Foreclosure Decree of the Court of Common Pleas, Allen County, Ohio granting Plaintiff-Appellee Deutsche Bank Trust Company's ("Deutsche Bank") motion for summary judgment which entitled Deutsche Bank to a decree of foreclosure and judgment in its favor as to its lien priority.
 {¶ 2} This matter involves a foreclosure of a mortgage by Deutsche Bank. On October 1, 2002 Deutsche Bank filed its complaint in foreclosure in the Allen County Court of Common Pleas requesting, in relevant part, a money judgment on the note (secured by a mortgage on the McCafferty's property located at 1470 Stewart Road in Lima, Ohio) and a judgment in foreclosure on the property. Kermit and Julie McCafferty filed an answer and counterclaim on November 5, 2002 wherein they alleged that the mortgage was invalid to convey the interest of Julie and that Julie's signature on the mortgage was the result of a fraud by the agents of Sebring Capital Corporation. *Page 3 
 {¶ 3} On August 12, 2005 Deutsche Bank filed a motion for partial summary judgment against Kermit and Julie as to the issues of Deutsche Bank's ownership of the mortgage loan, the mortgage encumbering the legal interest in the subject property of Julie, and the counterclaim of fraud. On April 25, 2006 the trial court denied Deutsche Bank's motion for partial summary judgment as there was a genuine issue of material fact as to whether Deutsche Bank was the real party in interest. However, the trial court granted Deutsche Bank leave to re-file their motion for summary judgment.
 {¶ 4} On December 29, 2006 Deutsche Bank re-filed its motion for summary judgment seeking a judgment granting it the right to foreclose on Kermit and Julie's property and lien priority in its favor under the doctrine of equitable subrogation. Specifically, Deutsche Bank alleged that it was a bona fide purchaser of the mortgage loan and therefore any fraud alleged by Julie could not be imputed to Deutsche Bank. Julie filed a response as to Deutsche Bank's re-filed motion for summary judgment on January 8, 2007.
 {¶ 5} On February 9, 2007 the trial court entered a Decision wherein it determined, in relevant part, that Deutsche Bank was subrogated to the rights of the previous creditors of Kermit and Julie, that Kermit and Julie were in default under the terms of the note and mortgage, and that Deutsche Bank was "entitled to summary judgment in its favor, entitled to a decree of foreclosure and judgment in *Page 4 
its favor as to lien priority." The court's Decision also instructed counsel for Deutsche Bank to "prepare and circulate a more complete Judgment Entry setting forth the particulars of a Judgment Decree in Foreclosure."
 {¶ 6} On February 26, 2007 the trial court entered a Judgment Entry and Foreclosure Decree.
 {¶ 7} Julie now appeals, asserting three assignments of error.
 ASSIGNMENT OF ERROR NO. 1 THE COURT BELOW ERRED BY FINDING IN ITS JUDGMENT ENTRY AND FORECLOSURE DECREE THAT DEFENDANT JULIE L. MCCAFFERTY EXECUTED THE MORTGAGE DEED, WHICH IS THE SUBJECT OF THE PLAINTIFF'S PRESENT ACTION FOR FORECLOSURE.
 ASSIGNMENT OF ERROR NO. 2 THE COURT BELOW ERRED IN RULING THAT THE PLAINTIFF IS EQUITABLY SUBROGATED TO THE RIGHTS OF A PRIOR MORTGAGE HOLDER AND IS THUS ENTITLED TO FORECLOSE ON THE PREMISES.
 ASSIGNMENT OF ERROR NO. 3 THE COURT BELOW ERRED IN FINDING IN ITS JUDGMENT ENTRY AND FORECLOSURE DECREE THAT UPON SALE THE AMOUNT TO BE PAID TO THE PLAINTIFF WAS $127,228.06 PLUS INTEREST AT 10.25% PER ANNUM FROM APRIL 1, 2002.
 {¶ 8} An appellate court reviews a grant of summary judgment independently, without any deference to the trial court.Conley-Slowinski v. Superior Spinning Stamping Co. (1998),128 Ohio App.3d 360, 363, 714 N.E.2d 991. The standard of review for a grant of summary judgment is de novo. *Page 5 
 Hasenfratz v. Warnement 3rd Dist. No. 1-06-03,2006-Ohio-2797 citing Lorain Nat'l. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 572 N.E.2d 198. A grant of summary judgment will be affirmed only when the requirements of Civ.R.56(C) are met. This requires the moving party to establish: (1) that there are no genuine issues of material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Civ.R.56(C); see Horton v. Harwich Chem.Corp. (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus.
 {¶ 9} The party moving for summary judgment bears the initial burden of identifying the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 116, 526 N.E.2d 798. The moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case. Dresher v. Burt (1996),75 Ohio St.3d 280, 292, 662 N.E.2d 264. Once the moving party demonstrates that he is entitled to summary judgment, the burden shifts to the non-moving party to produce evidence on any issue which that party bears the burden of production at trial. See Civ.R.56(E). *Page 6 
 {¶ 10} A brief review of the facts of this case is necessary prior to addressing the merits of the present appeal.
 {¶ 11} On August 29, 2001 Kermit McCafferty traveled to Columbus, Ohio to sign a refinancing note and mortgage for a loan from Sebring Capital Corporation ("Sebring"), as closed by Champaign County Title Agency, Inc. ("Champaign Title"). It is uncontested that at closing, the note was signed by Kermit only, and that Kermit also signed a mortgage encumbering his interest in the real property. However, a signature purporting to be that of Julie also appears on the mortgage, alleged and admitted to having been placed there by Kermit.
 {¶ 12} Regarding his signing of Julie's name on the mortgage, Kermit contends that a representative from Sebring advised him that Julie did not need to be present at the closing as she was not a party to the transaction. However, Kermit alleges that when signing the mortgage, he was advised that Julie's signature was needed on the paperwork. Kermit alleges that representatives of Sebring and Champaign Title directed him to sign Julie's name to the mortgage, stating that he could do so because they were married.[1]
 {¶ 13} At closing, mortgage loan proceeds in the amount of $127,500.00 were received from Deutsche Bank, of which $107,212.48 were used to pay off a *Page 7 
prior first mortgage held by First Union Bank of Delaware ("First Union"), and the remainder of which were allegedly used to pay off additional debts owed by Julie and Kermit (either individually or jointly). The First Union mortgage was executed by both Kermit and Julie and was recorded on August 16, 2000 in Allen County, Ohio.
 {¶ 14} Although Sebring was the lender or broker that originated the loan at issue in the present case, this loan was later purchased by Deutsche Bank, the successor in interest to Bankers Trust Company.
 {¶ 15} In its motion for summary judgment, Deutsche Bank sought a judgment granting it the right to foreclose on Kermit and Julie's property, in which Julie claims a one-half interest. In response, Julie alleged that she never personally obligated herself on the note secured by the mortgage. Deutsche Bank agreed that Julie had no liability on the promissory note, and did not request judgment against her on the note. Instead, Deutsche Bank sought a judgment of foreclosure on the mortgage and lien priority in its favor, pursuant to the doctrine of equitable subrogation.
 {¶ 16} In addressing the merits of Julie's assignments of error, we must first note the inconsistent language of the February 9, 2007 Decision and February 26, 2007 Judgment Entry and Foreclosure Decree entered by the trial court. *Page 8 
 {¶ 17} In its February 9, 2007 Decision, the trial court acknowledged an agreement of the parties that Julie did not sign or execute the note. Specifically, the trial court stated, in relevant part, as follows:
 Defendant Julie McCafferty makes an argument that she never personally obligated herself on the note secured by the mortgage. Plaintiff agrees Julie McCafferty has no liability on the obligation upon which the mortgage was given to secure. Plaintiff does not ask for a judgment as to the liability on the note. Plaintiff is seeking a judgment of foreclosure on the mortgage and lien priority in its favor, under the doctrine of equitable subrogation.
 * * *
 In this case, plaintiff claims it is entitled to a decree of foreclosure and priority of its lien over the interest asserted by Julie McCafferty because the funds given under the obligation upon which the mortgage was given were used to pay off a previous mortgage debt owed by both Kermit and Julie McCafferty.
 * * *
 The plaintiff has pointed out evidence that shows Kermit and Julie were debtors on the previous loan and that the instant indebtedness resulted in funds that were used to pay off that previous debt, thus plaintiff has shown its interest, by way of the instant mortgage, in the defendant's premises and that plaintiff paid a debt due by both defendants under such circumstances that plaintiff is in equity entitled to the security held by the creditor whom plaintiff paid. In other words, plaintiff is subrogated to the rights of the previous creditor of Kermit and Julie McCafferty. Defendant has not shown there is a genuine issue of fact with regard to this.
 {¶ 18} Although the trial court did not expressly address Julie's signature on the mortgage, it is uncontroverted in the record that Julie's signature was placed on the mortgage by Kermit. This appears to be accepted by the trial court *Page 9 
in its February 9, 2007 Decision by granting judgment for Deutsche Bank on the basis of equitable subrogation, a rationale which would have been unnecessary if the trial court believed that Julie's signature on the mortgage was genuine.
 {¶ 19} In contrast, in its February 26, 2007 Judgment Entry and Foreclosure Decree the trial court found as follows:
 The Court further finds that in order to secure the payment of the Note, Kermit L. McCafferty and spouse Julie McCafferty, executed and delivered a certain mortgage deed set forth in the Second Count of the Complaint (the "Mortgage") . . . (Emphasis added).[2]
 {¶ 20} Obviously the February 26, 2007 Judgment Entry appears to be inconsistent with the trial court's February 9, 2007 Decision and directly contradicts the significant evidence in the record that Julie was not present on the date the note and mortgage were signed, that she did not sign or otherwise execute the mortgage deed, and that Kermit signed Julie's name to the mortgage. This, in and of itself, creates a genuine issue of fact in this case as to Julie's role in this transaction.
 {¶ 21} Unfortunately, we find that there are a number of other issues of material fact that are clearly unresolved in the record. These include the *Page 10 
following:
(1) The role of Amber Birko in this case.
 {¶ 22} Julie alleges that at closing the note was signed by Kermit only, and at the same time, Kermit signed a mortgage encumbering his interest in the real property. However, when signing the mortgage, Kermit was advised that Julie's signature was needed on the paperwork. Although Julie alleges that Kermit had no authorization to sign her name in her absence, Julie also alleges that Kermit was directed by representatives of Sebring and Champaign Title to sign her name to the mortgage and was advised that he could do so because they were married. According to Julie, in following these directions, Kermit signed his name and Julie's name to the mortgage.
 {¶ 23} Our review of the mortgage document indicates that Kermit's and Julie's signatures were witnessed by Amber Birko, an employee of Champaign Title, and John Birko. Additionally, we note that the mortgage contains the signature of Amber Birko, as a Notary Public for the State of Ohio, County of Franklin. In her capacity as a notary, Amber stated that "the foregoing instrument was acknowledged before me this 29th day of August, 2001 by Kermit L. McCafferty and Spouse and Julie McCafferty" even though all remaining evidence in the record indicates that Julie was not present at the time of signing, never appeared before Amber Birko, and did not sign the document. *Page 11 
 {¶ 24} In support of its motion for summary judgment, Deutsche Bank attached the affidavit of Amber Birko. In this affidavit, Amber stated that she was employed by Champaign Title. Amber also alleged that the loan proceeds were used to pay off "numerous other debts that Defendants McCafferty had incurred for many thousands of dollars . . ." Additionally, Amber alleged that "a whole package of loan documents were signed by Defendant Kermit L. McCafferty with the intent to encumber the entire legal interest, not just his." It is unclear to this court how Amber could determine both Kermit and Julie's intent and the intent to encumber the entire legal interest when Julie was not present at the signing.
 {¶ 25} On its face, we find that Amber's notarization of the mortgage document as if both Kermit and Julie were present, when it appears that Julie was not present and had not signed the documents violates R.C.147.53 and would constitute a gross abuse of Amber's position as a notary.[3] Additionally, we find that the statements contained in Amber's affidavit raise a genuine issue of material fact as to whether Amber, as an employee of Champaign Title, conducted the mortgage transaction and acted in a fraudulent manner by notarizing the signature purporting to be Julie's signature as if Julie were present at the signing and *Page 12 
attesting to the validity of her signature.
 {¶ 26} Taken together, the mortgage document containing Amber's signature as a notary, and Amber's affidavit filed in support of Deutsche Bank's motion for summary judgment cause Amber's credibility to be called into question. The issue of her credibility, particularly as it relates to what, if any, authorization or direction Kermit had to sign Julie's name on the mortgage, also raises an issue of fact as to whether Deutsche Bank was on notice that Julie's signature on the mortgage was not genuine and that the notarization was fraudulent, at the time Deutsche Bank acquired the mortgage. Such notice or knowledge could preclude the application of equitable subrogation of this lien in favor of Deutsche Bank. The fact that Amber is now submitting an affidavit in support of Deutsche Bank raises an issue as to her relationship and that of Champaign Title to Deutsche Bank at all times relevant herein, and in turn as to what, if any, fraudulent knowledge might be imputed to Deutsche Bank.
 {¶ 27} Finally, we note that there may be an issue regarding the validity of the note and mortgage documents due to a possible fraudulent acknowledgment or due to the fact that Kermit signed Julie's signature without her being present. See, for example, Kirchberg v. Feenstra
(1981), 450 U.S. 455, 101 S.Ct. 1195, 67 L.Ed.2d 428; Society Nat'l.Bank v. Kienzle (1983), 11 Ohio App.3d 178, 463 N.E.2d 1261. *Page 13 
 (2) Julie's ratification or knowledge of the loan transaction.
 {¶ 28} In her affidavit, Julie states that "at no time did I give anyone authority or permission to sign my name to any documents associated with the note or mortgage transaction that is the subject of Plaintiff s foreclosure action." Julie also alleges that "I am not aware of the documents that have been signed, other than those provided by Plaintiff herein as I have not seen them prior to the foreclosure." Additionally, Julie states "I did not sign nor did I authorize my signature on the mortgage that is attached to Plaintiffs complaint. Further, although it appears that Amy [sic] Birko notarized my signature on the mortgage, she did so falsely and fraudulently."
 {¶ 29} We find that Julie's affidavit raises genuine issues of material fact as to whether Julie agreed to Kermit's signing her name and whether Julie even had knowledge that Kermit was entering into a new mortgage agreement. Additionally, we find that there are genuine issues of material fact as to whether Kermit voluntarily decided to sign Julie's name without her authority or if he was pressured to do so by representatives of Sebring or Champaign Title. Accordingly, we find that there are genuine issues of material fact relating to the credibility of Kermit and Julie McCafferty, bearing specifically on Julie's knowledge or ratification of the loan transaction and, equally important, her knowledge or ratification of any subsequent debt payments made on her behalf. *Page 14 
 (3) The monetary extent of any equitable subrogation.
 {¶ 30} We note that Deutsche Bank contends that it is entitled to a judgment of foreclosure on the mortgage and lien priority in its favor under the doctrine of equitable subrogation. Our review of the record reveals that Deutsche Bank's motion for summary judgment requested that the court find that it held "a first lien position on the premises to the extent of at least "$108,212.48, (plus interest and costs and expenses advanced received from any sheriff sale . . . based on the doctrine of equitable subrogation." (See Deutsche Bank's motion for partial summary judgment, p. 7).
 {¶ 31} In its February 9, 2007 Decision, the trial court applied the doctrine of equitable subrogation and determined as follows:
 The plaintiff has pointed out evidence that shows Kermit and Julie were debtors on the previous loan and that the instant indebtedness resulted in funds that were used to pay off that previous debt, thus plaintiff has shown its interest, by way of the instant mortgage, in the defendant's premises and that plaintiff paid a debt due by both defendants under such circumstances that plaintiff is in equity entitled to the security held by the creditor whom plaintiff paid. In other words, plaintiff is subrogated to the rights of the previous creditor of Kermit and Julie McCafferty. Defendant has not shown there is a genuine issue of fact with regard to this.
 {¶ 32} However, in its February 26, 2007 Judgment Entry and Foreclosure Decree, the trial court found as follows:
 The Court finds on the evidence adduced that there is due to Plaintiff on the promissory note set forth in the First Count of *Page 15 the Complaint ("the Note"), the sum of $127,228.06 plus interest at 10.25% per annum from April 1, 2002, for which sum judgment is hereby rendered in favor of Plaintiff.
 {¶ 33} On appeal, Julie argues that the trial court erred in its February 27, 2007 Judgment Entry by finding that Deutsche Bank was entitled to judgment in the amount of "$127,228.06 plus interest at 10.25% per annum. . ."
 {¶ 34} Our review of the record reveals that the total amount borrowed by Kermit on August 29, 2001, and closed by Champaign Title was $127,500.00. However, we note that the prior first mortgage, as executed by both Kermit and Julie and recorded on August 16, 2000, had a balance of only $107,212.48. Thus, even if we were to assume that the trial court correctly applied the doctrine of equitable subrogation to this case, we find that there are genuine issues of material fact remaining as to the allocation of the funds secured by the mortgage at issue; and specifically, whose debts were paid off as between Kermit and Julie. For example, we note that in response to Deutsche Bank's motion for summary judgment, Kermit and Julie alleged that "the miscellaneous bills that were paid were Kermit's and not Julie's." Additionally, we note that in her affidavit, Julie alleges that she "did not authorize any payoff of any debts by Plaintiff." Accordingly, we find that there are genuine issues of material fact regarding what debts the money from the note and mortgage was used to pay off (other than the balance of $107,212.48 remaining on the prior mortgage) and to what extent, if *Page 16 
any, Julie benefitted from the payment of any debts beyond her half interest in the $107,212.48 first mortgage debt.
 {¶ 35} In sum, our review of the record reveals numerous matters that are either unresolved or placed in conflict by the trial court which create genuine issues of material fact regarding the circumstances surrounding the execution of this lien and foreclosure of the McCafferty's property in the present case. These genuine issues of material fact preclude the granting of summary judgment for either Deutsche Bank or Julie McCafferty. For these reasons, we find that the trial court erred in granting summary judgment in favor of Deutsche Bank. Accordingly, Julie's three assignments of error are sustained.
 {¶ 36} Therefore, the February 9, 2007 Decision and February 26, 2007 Judgment Entry of the Allen County Court of Common Pleas are reversed and this matter is remanded to the trial court for further proceedings consistent with this opinion.
Judgment Reversed and Cause Remanded.
 PRESTON and WILLAMOWSKI, J.J., concur.
[1] Champaign Title is the title company that closed the loan from Sebring to the McCaffertys. Neither Sebring nor Champaign Title is a party to the present appeal. We also note that no agent of either Sebring or Champaign Title is a party to this case.
[2] We note that the February 26, 2007 Judgment Entry and Foreclosure Decree was submitted to the trial court by counsel for Deutsche Bank. We also note that page 5 of this document indicates that the same was "circulating for attorney approval" to Julie's attorney and the attorney for the Treasurer of Allen County, Ohio. However, we note that on appeal Julie argues that her attorney did not receive a copy of the Judgment Entry and Foreclosure Decree for approval until the same was received from the trial court.
[3] Chapter 147 of the Ohio Revised Code governs notaries public and commissioners. R.C. 147.53 specifically provides as follows: "The person taking an acknowledgement shall certify that: (A) The person acknowledging appeared before him and acknowledged he executed the instrument; (B) The person acknowledging was known to the person taking the acknowledgement, or that the person taking the acknowledgment had satisfactory evidence that the person acknowledging was the person described in and who executed the instrument." *Page 1