[Cite as *Schlenker Ents., L.P. v. Reese*, 2010-Ohio-5308.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

SCHLENKER ENTERPRISES, LP,
    PLAINTIFF-APPELLEE,

    v.

DONALD K. REESE, ET AL.,          CASE NO. 2-10-16
    DEFENDANTS-APPELLEES,
    -and-

MICHAEL J. STUBBS,
    DEFENDANT/THIRD-PARTY
    PLAINTIFF-APPELLANT,        O P I N I O N

    v.

IDC OHIO HOLDINGS, LLC, ET AL.,
    THIRD-PARTY DEFENDANTS -
    APPELLEES.

---

SCHLENKER ENTERPRISES, LP,
    PLAINTIFF-APPELLEE,

    v.

DONALD K. REESE, ET AL.,          CASE NO. 2-10-19
    DEFENDANTS-APPELLEES,
    -and-

MICHAEL J. STUBBS,
    DEFENDANT/THIRD-PARTY
    PLAINTIFF-APPELLANT,        O P I N I O N

    v.

IDC OHIO HOLDINGS, LLC, ET AL.,
    THIRD-PARTY DEFENDANTS -
    APPELLEES.

**Appeals from Auglaize County Common Pleas Court**
**Trial Court No. 08-CV-0044**

**Judgments Affirmed in Part, Reversed in Part and Cause Remanded**

**Date of Decision:   November 1, 2010**

**APPEARANCES:**

*John A. Poppe* **for Appellant Michael J. Stubbs**

*Matthew J. Kentner*  **for Appellee  Schlenker Enterprises, LP**

*Eric K. Combs*  **for Appellees IDC Holding and John Slack**

*Nelson Genshaft*  **for Appellee Tom Slack**

**PRESTON, J.**

**{¶1}** Defendant-appellant, Michael J. Stubbs (hereinafter "Stubbs"), appeals the judgments of the Auglaize County Court of Common Pleas, which granted partial summary judgment in favor of plaintiff-appellee, Schlenker Enterprises (hereinafter "Schlenker"), and dismissed all of Stubbs' claims under the Ohio Corrupt Practices Act (hereinafter "OCPA") against Schlenker and third-party defendants-appellees, IDC Ohio Holdings, L.L.C. (hereinafter "IDC"), John

Slack, and Tom Slack. For the reasons that follow, we affirm, in part, and reverse, in part.

{¶2} Stubbs is the current tenant and operator of a Dairy Queen franchise located in Wapakoneta, Ohio, on real estate that was originally owned by Schlenker Enterprises. The issues in this appeal concern Stubbs' liability for past rent due to Schlenker, which was decided on a motion for partial summary judgment; and Schlenker's subsequent sale of its real estate and building to IDC and the Slacks, which Stubbs claims was the result of a pattern of corrupt activity, and which issues were decided through Civ.R. 12(B)(6) dismissals.

### The Facts

{¶3} On October 18, 1993, Schlenker Enterprises executed a lease agreement with defendants Donald and Paula Reese, in which Schlenker Enterprises agreed to construct and lease a building to the Reeses for a period of fifteen (15) years. In return, the Reeses agreed to only use the leased premises for the operation of a Dairy Queen restaurant. The Reeses eventually executed a franchise operating agreement with Dairy Queen, and they were given the right to conduct a Dairy Queen business on the Schlenker's premises. Additionally, on May 27, 1994, the parties executed an addendum to the lease agreement where they agreed to an increased monthly rent payment of $4,314.00 for the first two years, and then $4,614.00 for the remainder of the lease.

{¶4} On May 28, 1996, the Reeses, with Schlenker's and Dairy Queen's approval, assigned their interests in the lease agreement and in the Dairy Queen franchise operating agreement to defendant Stubbs. In the agreement, Stubbs assumed and agreed to perform all of the obligations under the original lease agreement (and subsequent addendum), and agreed to indemnify the Reeses in the event that Stubbs failed to perform any of the original obligations.

{¶5} After the Reeses assigned their interests to Stubbs, Stubbs began operating the Dairy Queen business and made his monthly rent payments ($4,614.00) to Schlenker. Everything proceeded smoothly until sometime in 1999 when it is undisputed that Stubbs began to get behind on his monthly rent payments. It is also undisputed that instead of claiming the lease agreement in default for Stubbs' failure to pay rent, Schlenker worked with Stubbs and took whatever Stubbs could give it as far as rent payments were concerned. Nevertheless, Schlenker kept a record of Stubbs' partial rent payments and tallied the total amount he owed in past rent payments, which it periodically sent to Stubbs and the Reeses.

{¶6} Ultimately, after several years of mounting back rent payments, sometime in 2006, Stubbs and Schlenker discussed the possibility of selling their respective interests (Stubbs' interest in the Dairy Queen franchise, plus his

equipment, and Schlenker's real estate and building) to an outside third-party.[1] Eventually, IDC, through its representatives John and Tom Slacks, expressed interest in buying both the real estate and Stubbs' equipment and franchise agreement. IDC signed a letter of intent with Stubbs in which it expressed in writing that it intended to buy the property and business for a total of $730,000.00, apportioned as follows: $535,000.00 to Schlenker for the land and building, and $195,000.00 to Stubbs for the Dairy Queen business. Moreover, IDC drafted, signed, and gave to Stubbs a sales contract in which it again stated that IDC would buy the property, building, and business for a total of $730,000.00, apportioned as follows: $535,000.00 to Schlenker for the land and building, and $195,000.00 to Stubbs for the Dairy Queen business.

{¶7} The parties' dispute the specific facts as to what happened after Stubbs obtained the letter of intent and purchase agreement from IDC. Nevertheless, it is undisputed that on June 22, 2006, Schlenker sold its real estate and building to IDC for $535,000.00 and assigned its leaseholder interest to IDC on July 5, 2006. In addition, it is also undisputed that on July 5, 2006, the same day it obtained Schlenker's leaseholder interest, IDC sold the property to an

---

[1] There is some debate as to whether Schlenker and Stubbs entered into an oral agreement in which they agreed to sell their respective interests together. Stubbs claims that he was given authority to act for Schlenker in terms of finding and negotiating a deal with a third-party buyer. However, Schlenker claims that it never gave Stubbs authority, but rather merely expressed that it would consider selling its interest if an opportunity presented itself.

Oregon limited liability company, Timberline River Ranch, L.L.C., and Norman and Roberta Pickett. It is clear that IDC did not purchase, and ultimately has never purchased from Stubbs his Dairy Queen business assets. In addition, IDC has never acquired the right to operate a Dairy Queen franchise on that property; although Stubbs claims that IDC represented to Timberline and the Picketts that it owned the Dairy Queen business assets and franchise operating agreement, and he claims that IDC sold these assets and the franchise operating agreement to Timberline River Ranch and the Picketts as well as the property.

<u>Procedural History</u>

{¶8} Procedurally, this case started on January 31, 2008, when Schlenker filed suit against Stubbs for past due rent.[2] Stubbs filed an answer and counterclaim on March 18, 2008, denying the allegations made by Schlenker and claiming that the parties had orally modified the lease agreement. In his counterclaim, Stubbs asserted claims of breach of oral contract, unjust enrichment, and fraud. On July 1, 2008, Schlenker filed a motion for summary judgment against Stubbs, and Stubbs filed a motion for summary judgment against

---

[2] We note that Schlenker also sued the Reeses for Stubbs' past due rent under the provision of the assignment in which the Reeses agreed to remain liable under the terms of the original lease for any defaults committed up until June 1, 2001. The Reeses filed a cross-claim against Stubbs under the assignment's indemnification provision. Ultimately, the trial court found that the Reeses were only responsible for the past due rent that was owed on the date of June 1, 2001, and while the trial court entered a judgment against the Reeses for that specified amount, it also granted a judgment for indemnification for the Reeses against Stubbs for that specified amount as well. The Reeses did not appeal, so their judgments are not at issue on this appeal.

Schlenker, which he subsequently withdrew on September 30, 2008. During this time, Stubbs also filed a motion to join IDC Ohio Holdings and filed a third-party complaint on September 16, 2008.

{¶9} Ultimately, on October 23, 2008, the trial court granted Schlenker's motion for summary judgment finding that there were no genuine issues of material fact and that Stubbs owed Schlenker past rent due.[3] In addition, the trial court allowed Stubbs to amend his counterclaim and third-party complaint.

{¶10} On December 12, 2008, Stubbs filed an amended counterclaim against Schlenker and a third-party complaint against IDC, John Slack, and Tom Slack.[4] In his amended counterclaim, Stubbs asserted that Schlenker had committed OCPA violations, had breached its fiduciary relationship with Stubbs, had been unjustly enriched by its transaction with IDC, and had breached its contract with him. In his third-party complaint, Stubbs alleged that IDC and the Slacks had also committed OCPA violations, had been unjustly enriched, and additionally sought punitive damages on the basis of their conduct.

---

[3] We note that in its October 23, 2008 judgment entry the trial court failed to include Civ.R. 54(B) language, and because there were other claims pending, its entry was not a final, appealable order. However, in its March 3, 2010 judgment entry the trial court stated that as to Schlenker's motion for summary judgment which it had granted on October 23, 2008, it "finds that said summary judgment of October 23, 2008, is a final judgment, as there is no just reason for delay." (Mar. 3, 2010 JE).

[4] Stubbs also filed a third-party complaint against David Berry, who also filed a counterclaim against Stubbs. Eventually, Berry and Stubbs entered into a stipulation dismissing all their claims against one another, with prejudice. The trial court issued a judgment entry recording the parties' stipulation and dismissing their claims against one another with prejudice. (Mar. 12, 2010 JE).

{¶11} Tom Slack filed a pro se answer to Stubbs' third-party complaint. In addition, IDC and John Slack filed a joint answer denying all of the allegations made in Stubbs' third-party complaint, and filed a counterclaim against Stubbs for breach of contract as a result of Stubbs' alleged failure to make timely rent payments. Subsequently, IDC and John Slack, and eventually Schlenker, all filed motions to dismiss the OCPA claims on the basis that Stubbs had failed to state a claim upon which relief could be granted pursuant to Civ.R. 12(B)(6). Stubbs thereafter filed a motion contra to all of the motions to dismiss.

{¶12} On December 24, 2009, the trial court granted Schlenker's motion to dismiss the OCPA claims pursuant to Civ.R. 12(B)(6). However, the trial court allowed Stubbs time to amend his third-party complaint as to IDC and the Slacks with respect to the OCPA violations, stating that his complaint needed to be pled with more particularity with respect to the parties' conduct that allegedly gave rise to these violations. Stubbs filed his amended third-party complaints against IDC and the Slacks, and in addition, filed an amended counterclaim against Schlenker on March 1, 2010.

{¶13} Despite Stubbs' amended third-party complaints and counterclaim, on March 3, 2010, the trial court dismissed all of the OCPA claims as to all of the parties (excluding Tom Slack, who at that time had yet to file a Civ.R. 12(B)(6) motion). In its judgment entry, the trial court reasserted that any violations of the

OCPA as asserted against Schlenker were dismissed because even if Schlenker had known that the purchase money for the real estate "was derived from a pattern of corrupt activity," this was simply insufficient to state a cause of action pursuant to R.C. 2923.32 and R.C. 2923.34. With respect to IDC and John Slack, the trial court found that even construing the allegations most strongly in favor of Stubbs, the OCPA claims could not stand because he had failed to allege how he directly had been injured by IDC and John Slack's pattern of corrupt activity.

{¶14} Subsequently, on March 23, 2010, Tom Slack filed a motion to dismiss the OCPA claim pursuant to Civ.R. 12(B)(6), and the trial court, for the exact same reasons that it had dismissed the OCPA claims against IDC and John Slack (failure of Stubbs to allege an injury resulting from their pattern of corrupt activity), likewise dismissed the OCPA claim against Tom Slack.

{¶15} Stubbs now appeals and raises five assignments of error for our review.

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED IN GRANTING APPELLEE-PLAINTIFF SUMMARY JUDGMENT AGAINST APPELLANT.**

{¶16} In his first assignment of error, Stubbs argues that the trial court erred in granting Schlenker's motion for summary judgment when there were

genuine issues of material fact regarding whether Schlenker had waived its right to collect any past due rent.

{¶17} We review a decision to grant summary judgment de novo. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243. Under this standard of review, we review the appeal independently, without any deference to the trial court. *Conley-Slowinski v. Superior Spinning & Stamping Co.* (1998), 128 Ohio App.3d 360, 363, 714 N.E.2d 991. A motion for summary judgment will be granted only when the requirements of Civ.R. 56(C) are met. Thus, the moving party must show: (1) that there is no genuine issue of material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 219, 631 N.E.2d 150.

{¶18} The party asking for summary judgment bears the initial burden of identifying the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 116, 526 N.E.2d 798. The moving party must also demonstrate the absence of a genuine issue of material fact as to an essential element of the case. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. Then the moving party

must demonstrate that they are entitled to summary judgment as a matter of law, at which time, the burden then shifts to the non-moving party to produce evidence on any issue which that party bears the burden of production at trial. *Deutsche Bank Trust Co. v. McCafferty*, 3d Dist. No. 1-07-26, 2008-Ohio-520, ¶9, citing Civ.R.56(E).

{¶19} Here, Schlenker filed a motion for summary judgment claiming that it was entitled to back rent from Stubbs in the amount of $111,028.81 as a matter of law. The trial court agreed and found that, based on the language of the lease agreement, the addendum, and the assignment, it was clear that Stubbs had an obligation to make monthly rent payments to Schlenker and that Schlenker had a right to collect the past due rent Stubbs owed it. We agree.

{¶20} The original lease signed by the Reeses and Schlenker specifically provided that:

> **In the event Lessee shall be in default with respect to any of the Lessee's covenants or obligations under this Lease, including the payment of rent, Lessor shall give written notice thereof to Lessee. If Lessee shall fail to cure such default within thirty (30) days from the receipt of such notice, or if the default is of such character as to require more than thirty (30) day period, commenced with reasonable diligence to remedy the default, then Lessor may, at its option, terminate this Lease by written notice to Lessee.**

(Plaintiff's Ex. 1). In addition, the lease went on to provide that:

> **The failure of either Lessor or Lessee to insist upon a strict and prompt performance of any of the covenants and conditions of**

**this Lease to be performed by the other party shall not be construed as a waiver or relinquishment of the future right to insist upon performance of such covenants and conditions by such other party, but such right shall remain in full force and effect.**

(Id.). Moreover, the assignment, which was signed by Stubbs, the Reeses, and Schlenker, specifically stated that "[a]ssignee accepts this assignment and assumes and agrees to perform all of the obligations of Assignors arising or accruing under this Lease on or after the date of this Agreement." (Plaintiff's Ex. 4). One of the obligations Stubbs agreed to assume and perform was the obligation to pay Schlenker monthly rent payments in the amount of $4,614.00, which he failed to do consistently for the leasehold period. Rather than suing Stubbs immediately for past rent due, Schlenker decided to work with Stubbs and took what Stubbs could give as far as rent. However, Schlenker's right to collect past due rent pursuant to the terms of the lease agreement remained in full force and effect despite the fact that Schlenker failed to sue Stubbs immediately.

{¶21} Nevertheless, on appeal Stubbs claims that there were genuine issues of material fact as to whether Schlenker had *waived* its right to seek back rent payments from him directly. In particular, Stubbs claims that when Schlenker transferred its leaseholder's interest over to IDC, it worked out a deal with IDC in which instead of giving Stubbs the entire amount of the purchase money, IDC

would instead give Schlenker $111,028.81 of the purchase money owed to Stubbs, which represented the amount Stubbs owed Schlenker in back rent.

**{¶22}** We note that below Stubbs only argued that he and Schlenker had "orally modified" the lease agreement and did not specifically raise the issue of waiver arising as a result of Schlenker and IDC's transaction. As such, we find that Stubbs has waived this argument by failing to raise it in the trial court. *Dibert v. Watson*, 3d Dist. No. 8-09-02, 2009-Ohio-2098, ¶15, citing *State ex re. Zollner v. Indus. Comm.* (1993), 66 Ohio St.3d 276, 278, 611 N.E.2d 830. Nonetheless, even if we were to find that Stubbs has not waived the issue, we find that there are no genuine issues of material fact regarding whether Schlenker had waived its right to collect past due rent directly from Stubbs, because even considering the evidence in a light most favorable to Stubbs, it is clear that Schlenker never waived its right to sue Stubbs directly for past rent due.

**{¶23}** The particular section of the purchase agreement between IDC and Schlenker that Stubbs cites to in support of his argument specifically provided:

> **Past due account. Purchaser acknowledges that Seller has notified them that Mike Stubbs, (dba Wapakoneta Dairy Queen), has a past due account of approximately $111,000.00 and has agreed to have this amount paid directly to Schlenker Enterprises LP by the Purchaser from the proceeds due to them from the sale of the operating assets. Seller will forward an updated statement of account to Purchaser at the closing. This amount is to be paid at the later closing with Mike Stubbs and deducted from the Stubbs proceeds.**

(Plaintiff's Ex. 5). In addition, Stubbs claims that even Philip Schlenker believed that Schlenker and Stubbs had had a deal in which they would both sell their respective interests to IDC, and Schlenker would then collect the back rent from Stubbs' portion of the sale proceeds. At his deposition, Philip Schlenker acknowledged that he and Stubbs had agreed to work together to sell both the business and the real estate together, and that such a deal would result in Schlenker getting paid back whatever lease money it was owed. (Schlenker Dep. at 31). Stubbs claims that this provision in its purchase agreement with IDC, along with Philip Schlenker's personal understanding that Schlenker would get paid by IDC when IDC bought out Stubbs, raises a question of fact as to whether Schlenker waived its right to go after Stubbs directly for past due rent. We disagree.

{¶24} It is very clear Schlenker never waived its right to sue Stubbs directly for past rent due. All the provision in the real estate agreement and Philip Schlenker's testimony illustrate is Schlenker's attempt at guaranteeing its payment for the past due rent owed to it by Stubbs. Despite Stubbs' arguments to the contrary, this arrangement was merely an alternative payment plan that was solely conditioned on IDC purchasing Stubbs' assets, which for whatever reason, never occurred. It in no way amounted to a waiver of its right to collect past rent due from Stubbs directly. In fact, Schlenker's arrangement with IDC just further

demonstrates that Schlenker never had any intention of waiving its right to collect the past due rent. Therefore, we find that the trial court did not err in granting summary judgment to Schlenker against Stubbs for the amount of the past rent due because there was no genuine issue of material fact as to whether Stubbs owed Schlenker past due rent.

{¶25} Stubbs' first assignment of error is, therefore, overruled.

## ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED IN THE OHIO CIVIL RULE 12(B)(6) DISMISSAL**

## ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT ERRED BY FINDING THAT THE PLAINTIFF IN COUNTER-CLAIM HAD NO DAMAGES FROM THE PATTERN OF CORRUPT ACTIVITY SIMPLY BECAUSE HE WAS NOT THE TARGET**

{¶26} In his second and third assignments of error, Stubbs argues that the trial court erred in dismissing his OCPA claims against Schlenker, IDC, and the Slacks on the basis that his complaint and counterclaim failed to state claims upon which relief could be granted under Civ.R. 12(B)(6).

{¶27} "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.* (1992), 65 Ohio St.3d 545, 548, 605 N.E.2d 378, citing *Assn. for the Defense of the Washington Local School Dist. v.*

*Kiger* (1989), 42 Ohio St.3d 116, 117, 537 N.E.2d 1292. For that reason, a trial court may not rely upon evidence or allegations outside the complaint when ruling on a Civ.R. 12(B)(6) motion. *State ex rel. Fuqua v. Alexander* (1997), 79 Ohio St.3d 206, 207, 680 N.E.2d 985. "Dismissals under Civ.R. 12(B)(6) are proper where the language of the writing is clear and unambiguous." *Keenan v. Adecco Employment Services, Inc.*, 3d Dist. No. 1-06-10, 2006-Ohio-3633, ¶9.

{¶28} To sustain a Civ.R. 12(B)(6) dismissal, "it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *LeRoy v. Allen, Yurasek, & Merklin*, 114 Ohio St.3d 323, 2007-Ohio-3608, 872 N.E.2d 254, ¶14, citing *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶11. Additionally, the complaint's allegations must be construed as true, and any reasonable inferences must be construed in the nonmoving party's favor. Id., citing *Maitland v. Ford Motor Co.*, 103 Ohio St.3d 463, 2004-Ohio-5717, 816 N.E.3d 1061, ¶11; *Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St.3d 415, 418, 650 N.E.2d 863.

{¶29} When reviewing a Civ.R. 12(B)(6) decision, this Court must determine whether the complaint's allegations constitute a statement of a claim under Civ.R. 8(A). *Keenan*, 2006-Ohio-3633, at ¶7. "All that the civil rules require is a short, plain statement of the claim that will give the defendant fair

notice of the plaintiff's claim and the grounds upon which it is based." *Patrick v. Wertman* (1996), 113 Ohio App.3d 713, 716, 681 N.E.2d 1385, citing *Kelly v. E. Cleveland* (Oct. 28, 1982), 8th Dist. No. 44448.  See, also, Civ.R. 8(A)(1).  When filing a claim pursuant to Civ.R. 8(A), "[a] party is not required to "plead the legal theory of recovery"; furthermore, "a pleader is not bound by any particular theory of a claim but that the facts of the claim as developed by the proof establish the right to relief." *Illinois Controls, Inc. v. Langham* (1994), 70 Ohio St.3d 512, 526, 639 N.E.2d 771.  Indeed, "that each element of [a] cause of action was not set forth in the complaint with crystalline specificity" does not render it fatally defective and subject to dismissal.  *Border City Sav. & Loan Ass'n v. Moan* (1984), 15 Ohio St.3d 65, 66, 472 N.E.2d 350.  See, also, *Parks v. Parks* (Mar. 5, 1998), 3d Dist No. 1-97-60, at *2.  However,

> **the complaint must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.**

*Fancher v. Fancher* (1982), 8 Ohio App.3d 79, 83, 455 N.E.2d 1344, citing 5 Wright & Miller, Federal Practice & Procedure: Civil (1969), at 120-123, Section 1216.

{¶30} This Court reviews de novo a trial court's decision to grant or deny a Civ.R. 12(B)(6) motion.  *RMW Ventures, L.L.C. v. Stover Family Invest., L.L.C.*,

161 Ohio App.3d 819, 2005-Ohio-3226, 832 N.E.2d 118, ¶8, citing *Hunt v. Marksman Prod.* (1995), 101 Ohio App.3d 760, 762, 656 N.E.2d 726. This Court may substitute, without deference, its judgment for that of the trial court when reviewing de novo. *Castlebrook, Ltd. v. Dayton Properties Ltd. Partnership* (1992), 78 Ohio App.3d 340, 346, 604 N.E.2d 808.

**{¶31}** Here, Stubbs alleged in his complaints that Schlenker, IDC, and the Slacks had, in some manner, committed OCPA violations, pursuant to R.C. 2923.32 *et seq*. The OCPA was modeled on the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), Section 1961, Title 18, U.S. Code. Generally, as part of the OCPA, R.C. 2923.32(A), makes it unlawful for any person employed by or associated with any enterprise to "conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." R.C. 2923.33 grants a civil remedy to a person injured or threatened with injury by a violation of R.C. 2923.32. In order to allege a civil claim under the OCPA, generally a plaintiff must allege with specificity:

> **(1) that conduct of the defendant involves the commission of two or more specifically prohibited state or federal criminal offenses, (2) that the prohibited criminal conduct of the defendant constitutes a pattern of corrupt activity, and (3) that the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise.**

*Kondrat v. Morris* (1997), 118 Ohio App.3d 198, 209, 692 N.E.2d 246, citing *Universal Coach, Inc. v. New York City Transit Auth., Inc.* (1993), 90 Ohio App.3d 284, 291, 629 N.E.2d 28. However, "failure of a plaintiff to plead any of the elements necessary to establish a RICO violation results in a defective complaint which cannot withstand a motion to dismiss as based upon a failure to state a claim upon which relief can be granted." *Universal Coach, Inc.*, 90 Ohio App.3d at 291.

{¶32} We note that the trial court dismissed the OCPA claims with respect to Schlenker for a different reason than with respect to IDC and the Slacks. Therefore, we will address each of the Civ.R. 12(B)(6) dismissals separately.

{¶33} Nevertheless, our review of the record demonstrates that Stubbs' third-party complaint and amended counterclaim alleged the same following set of facts: that he and Schlenker were tenant and landlord, respectively, of a building in which he operated a licensed franchise of Dairy Queen; that Stubbs' was the owner of the Dairy Queen business assets at that location; that he and Schlenker had entered into some kind of an oral contract in which they agreed to sell both the real estate and the business assets of Stubbs' business together to an outside third-party; that Stubbs found IDC and the Slacks and began negotiating the sale of the real estate and the business assets on behalf of himself and Schlenker; that Stubbs signed a "Letter of Intent to Purchase' submitted to him by IDC through its agent

Tom Slack on or about March 29, 2006; that Stubbs learned of problems with IDC through his negotiations; that Stubbs did not sign the 'Purchase & Sales Agreement' signed by Tom Slack on behalf of IDC dated May 30, 2006, tendered by IDC through its agent Tom Slack; that Schlenker proceeded to sell its real estate to IDC separately; that IDC immediately sold the real estate to another investor for an amount much greater than what IDC had paid to Schlenker; that IDC's scheme was to hold out properties to prospective investors as if IDC was the franchise owner of Dairy Queen, as if they owned the properties before they did, and as if the investors would be able to own the operating Dairy Queen franchise when Dairy Queen had not approved such transactions and 'was not allowing the franchise to be transferred'; that the buyers of the real estate from IDC were led to believe that IDC also owned the business assets belonging to Stubbs even though they had never purchased such business assets; that the investors were the ones who were directly injured by IDC and the Slacks' pattern of corrupt activity. (Dec. 17, 2008 Counterclaim & Third-Party Complaint at 10); (Mar. 1, 2010 Amended Counterclaim and Third-Party Complaint).

<u>Schlenker</u>

{¶34} On December 24, 2009, the trial court issued a judgment entry dismissing the OCPA claim against Schlenker finding that Stubbs had failed to allege with particularity "all three prongs of [the] test," and as such, found that

there were not sufficient pleadings to support an OCPA claim against Schlenker. (Dec. 24, 2009 JE at 2). Consequently, Stubbs attempted to file an amended counterclaim against Schlenker, on March 1, 2010. In its March 3, 2010 judgment entry, the trial court noted that it had already granted a motion to dismiss as to all claims arising under OPCA alleged against Schlenker. (Mar. 3, 2010 JE at 2). Nevertheless, the trial court still addressed Stubbs' amended counterclaim, and ultimately found that he had once again failed to allege all of the elements for a OCPA cause of action under R.C. 2923.32(A)(3). (Id.). We agree.

{¶35} First of all, we note that it is difficult to determine what specific causes of action Stubbs is alleging against Schlenker. Nevertheless, our review of the record demonstrates that Stubbs' counterclaim alleged the following: "Schlenker's conduct violated Ohio Revised Code §2923.32 by receiving proceeds derived directly or indirectly from an enterprise which conducted criminal activity, to wit, theft by deception, and by said deception took control of property beyond the scope of authority or implied authority of Stubbs." (Dec. 17, 2008 Counterclaim & Third-Party Complaint at 10). Furthermore, Stubbs' amended counterclaim goes on to allege: "Specifically Ohio Revised Code §2923.32(A)(3) which does not require that the person be a participant in the conspiracy, rather just requires that the person received proceeds derived directly or indirectly from a pattern of corrupt activity." (Mar. 1, 2010 Amended Counterclaim). As a result,

taking all of Stubbs' allegations as true and construing all inferences in his favor, the only OCPA cause of action this Court can determine from Stubbs' pleadings is a claim pursuant to R.C. 2923.32(A)(3).[5]  However, a review of the record demonstrates that Stubbs' counterclaim only alleged that Schlenker was "knowingly receiving money derived from a pattern of corrupt activity, when it sold its real estate to IDC knowing that it was engaging in a pattern of corrupt activity."  R.C. 2923.32(A)(3) states that:

> **No person, who knowingly has received any proceeds derived, directly or indirectly, from a pattern of corrupt activity or the collection of any unlawful debt, *shall use or invest*, directly or indirectly, *any part of those proceeds*, or any proceeds derived from the use or investment of any of those proceeds, *in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise.***

(emphasis added).  Thus, even when taking all of Stubbs' allegations as true and construing all inferences in his favor, it is clear that Stubbs' failed to allege with particularity a cause of action for R.C. 2923.32(A)(3).  Nowhere in Stubbs' amended counterclaim does he allege that Schlenker used or invested those proceeds in the acquisition of any title to real estate or the operation of any enterprise.  Just knowingly receiving proceeds from a pattern of corrupt activity is

---

[5] At oral arguments, Stubbs' counsel stated that they had only alleged that Schlenker had conspired to engage in a corrupt activity with IDC and the Slacks pursuant to the separate conspiracy statute.  However, as we will discuss below in his fifth assignment of error, Stubbs' counterclaim failed to assert a conspiracy allegation.  Rather, based on his pleadings, this Court can only find that Stubbs' counterclaim attempted to raise a R.C. 2923.32(A)(3) cause of action against Schlenker.

not sufficient to give rise to a cause of action under R.C. 2923.32(A)(3). The plaintiff must allege that that party actually *used or invested* those proceeds in the acquisition of title, right, interest or equity in real estate or in the establishment or operation of any enterprise. Therefore, we find that the trial court did not err in dismissing the OCPA claim against Schlenker since Stubbs' failed to allege all of the elements for an OCPA cause of action.

### IDC and the Slacks

{¶36} In his December 17, 2008 third-party complaint, Stubbs alleged that IDC and the Slacks had violated OCPA by engaging in "acts of mail fraud, wire fraud, and criminal infringement of a copyright in regards to the sale and re-leasing of the DQ Properties." (Dec. 17, 2008 Counterclaim & Third-Party Complaint at 15). On December 24, 2009, the trial court noted in its judgment entry that while the pleadings did put the defendants on notice as to which criminal violations they were accused of committing, the pleadings failed to allege with particularity what *conduct* of the defendants amounted to mail fraud, wire fraud, criminal infringement of a copyright. (Dec. 24, 2009 JE). As a result, the trial court granted Stubbs leave to amend his complaint as to those defendants, and warned him that "[f]ailure to set forth with particularity such matters as are vaguely referred to in the Complaint will result in the Court issuing a decision consistent with this opinion." (Id. at 2).

{¶37} Accordingly, Stubbs filed an amended third-party complaint against IDC and the Slacks on March 1, 2010. Nevertheless, on March 3, 2010, the trial court dismissed the OCPA claims against IDC and John Slack pursuant to Civ.R. 12(B)(6) for failure to state a claim on which relief can be granted, and similarly dismissed the OCPA claims against Tom Slack on March 23, 2010. Even though it had given Stubbs time to amend his complaint to further specify the particular conduct that IDC and the Slacks had allegedly committed, the trial court ultimately found that Stubbs had failed to allege how he had been injured by IDC and the Slacks' wrongful conduct under OCPA. (Mar. 3, 2010 JE at 3-5), (Mar. 23, 2010 JE). Consequently, because Stubbs had failed to allege facts showing how he had standing to bring the claim, the trial court dismissed the OCPA claims against IDC and the Slacks pursuant to Civ.R. 12(B)(6). We agree.

{¶38} Taking all of Stubbs' allegations as true and construing all inferences in his favor, all Stubbs alleged was that IDC and the Slacks engaged in a pattern of corrupt activity that resulted in *injuries to investors* who had purchased properties from IDC. A civil OCPA claim only can be brought by persons who are injured or threatened with injury from an OCPA violation. *Samman v. Nukta*, 8th Dist. No. 85739, 2005-Ohio-5444, ¶26 ("Appellant was not injured or threatened with injury by this activity, so he cannot maintain a civil RICO claim on this basis"); *U.S. Demolition & Contracting, Inc. v. O'Rourke*

*Constr. Co.* (1994), 94 Ohio App.3d 75, 85-86, 640 N.E.2d 235 (affirming the dismissal of OCPA claims that failed to allege injury). On the face of his third-party complaint, Stubbs only alleged that IDC and the Slacks had defrauded "unsuspecting investors" into buying Dairy Queen properties, business assets, and franchises that they did not own. Because he failed to show how he had been injured from the OCPA violations, the trial court was correct in dismissing his OCPA claims against IDC and the Slacks for lack of standing.

{¶39} Overall, we find that the trial court was correct to dismiss the OCPA claims against Schlenker, IDC, and the Slacks pursuant to Civ.R. 12(B)(6), because for the reasons stated above Stubbs failed to state claims upon which relief could be granted.

{¶40} Stubbs' second and third assignments of error are, therefore, overruled.

### ASSIGNMENT OF ERROR NO. IV

**THE TRIAL COURT ERRED IN TREATING THE OHIO CIVIL RULE 12(B)(6) DISMISSAL TO BE ON THE MERITS.**

{¶41} In his fourth assignment of error, Stubbs claims that the trial court erred by treating the Civ.R. 12(B)(6) dismissals as "with prejudice," or on the merits, as opposed to "without prejudice," or not on the merits.

{¶42} In this particular case, the trial court was silent as to whether the Civ.R. 12(B)(6) dismissals were with or without prejudice. However, while the

trial court's ruling did not specify whether the dismissals were with prejudice, "[a] trial court's silence as to the effect of a dismissal is treated as a ruling that the dismissal is with prejudice." *Ballreich Bros., Inc. v. Criblez* (July 12, 2010), 3d Dist. No. 5-09-36, 2010-Ohio-3263, ¶8 fn.3, quoting *Parker v. Giant Eagle, Inc.*, 7th Dist. No. 01 C.A. 174, 2002-Ohio-5212, ¶37, citing Civ.R. 41(B)(3). As such, we must determine whether the trial court erred in treating any of the Civ.R. 12(B)(6) dismissals as being on the merits.

**{¶43}** With respect to Schlenker, we believe that the trial court's dismissal should have been treated as being without prejudice. "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.* (1992), 65 Ohio St.3d 545, 548, 605 N.E.2d 378, citing *Assn. for the Defense of the Washington Local School Dist. v. Kiger* (1989), 42 Ohio St.3d 116, 117, 537 N.E.2d 1292. Moreover, this Court just recently found that a trial court's Civ.R. 12(B)(6) dismissal for a plaintiff's failure to allege with particularity a negligence cause of action against the defendants should have been treated as a dismissal without prejudice, because we found that the claim could have presumably been pleaded in a way that did state a cause of action for relief. *Ballreich Bros., Inc.*, 2010-Ohio-3263, at ¶¶12-13.[6] Similarly, Stubbs failed to

---

[6] We note that judges from the 2nd District Court of Appeals were sitting by assignment on this case.

allege with particularity all of the elements of an OCPA cause of action against Schlenker. Presumably, Stubbs could plead the OCPA cause of action in another way that does state a claim for relief. As such, the trial court's dismissal should have been without prejudice insofar as its dismissal concerned failing to allege with particularity all of the elements of an OCPA cause of action.

{¶44} We also find that the trial court's Civ.R. 12(B)(6) dismissals against IDC and the Slacks should have been without prejudice as well. Generally, a dismissal that is premised on jurisdiction "operate[s] as a failure other than on the merits" and should be a dismissal without prejudice. *Wells Fargo Bank, N.A. v. Byrd*, 178 Ohio App.3d 285, 2008-Ohio-4603, 897 N.E.2d 722, ¶18, citing Civ.R. 41(B)(4). A dismissal of an action because one of the parties does not have standing is not a dismissal on the merits. Id., citing *State ex rel. Coles v. Granville*, 116 Ohio St.3d 231, 2007-Ohio-6057, 877 N.E.2d 968, ¶51. As a result, the Civ.R. 12(B)(6) dismissals against IDC and the Slacks were not dismissals on the merits insofar as the trial court's dismissals concerned Stubbs' failure to demonstrate how he had standing to bring an OCPA action against IDC and the Slacks.

{¶45} Therefore, while we agree that the trial court was correct in dismissing the OCPA claims in Stubbs' third-party complaint and counterclaim against Schlenker, IDC, and the Slacks for failing to state claims upon which relief

could be granted, the ultimate reasons for dismissing those OCPA claims were procedural in nature (i.e., standing and failing to allege with particularity), and as such, they should have been considered as dismissals without prejudice.

{¶46} Stubbs' fourth assignment of error is, therefore, sustained.

### ASSIGNMENT OF ERROR NO. V

**THE COURT FAILED TO CONSIDER THAT APPELLEE/PLAINTIFF COMMITTED CONSPIRACY TO COMMIT A PATTERN OF CORRUPT ACTIVITY**

{¶47} In his fifth assignment of error, Stubbs claims that the trial court erred by failing to consider his conspiracy claim against Schlenker pursuant to R.C. 2923.01(A)(1). Stubbs claims that he had alleged in his counterclaim that Schlenker had committed conspiracy to commit a pattern of corrupt activity. In particular, Stubbs claims that he had alleged this conspiracy claim in his counterclaim when he alleged that Schlenker had conspired "with IDC in the scam by selling its real estate knowing it was to be used by IDC in a questionable business practice," pursuant to R.C. 2923.01(A)(1). (Appellant's Brief at 13). As a result, Stubbs claims that the trial court's dismissal of his OPCA claims against Schlenker was in error.

{¶48} First of all, as we noted above, it is extremely difficult to determine what exactly Stubbs alleged in his counterclaim and amended counterclaim against Schlenker. Nevertheless, after reviewing Stubbs' counterclaim and his subsequent

amended counterclaim, this Court cannot find any allegations of conspiracy against Schlenker. From what can be gathered from Stubbs' pleadings, the only OCPA theory he raised against Schlenker was pursuant to R.C. 2923.32(A)(3), which as discussed above was not pled with particularity. "'A complaint has an obligation to assert all theories of recovery for a single debt owed in the same cause of action. Failure to do so results in that remedy being forever waived.'" *Maverick Oil & Gas, Inc. v. Barberton City School Dist. Bd. of Edn.*, 171 Ohio App.3d 605, 2007-Ohio-1682, 872 N.E.2d 322, ¶23, quoting *Fort Jennings State Bank v. Roof* (Aug. 2, 1988), 3d Dist. No. 12-86-5, at *4. While the trial court did not consider the claim of conspiracy to commit a pattern of corrupt activity, it was not required to consider the claim as it was not adequately raised by Stubbs in his pleadings.

{¶49} Furthermore, we note that Stubbs' amended counterclaim in fact directly contradicts his argument that he had alleged a conspiracy theory against Schlenker:

> **39. Stubbs does not assert that he has a claim against Schlenker as a co-conspirator of an Ohio Pattern of Corrupt activity. However, the following first Claim is asserted as it is not relevant to the RICO charge for which the Court granted summary judgment in its Entry, dated December 21, 2009.**

(Mar. 1, 2010 Amended Counterclaim and Third-Party Complaint at 11).

{¶50} Therefore, based on the above, we find that the trial court did not err when it failed to consider Stubbs' allegations that Schlenker had conspired to commit a pattern of corrupt activity since Stubbs failed to adequately allege a separate conspiracy claim against Schlenker.

{¶51} Stubbs' fifth assignment of error is, therefore, overruled.

{¶52} Having found no error prejudicial to the appellant herein in the particulars assigned and argued with respect to appellant's first, second, third, and fifth assignments of error, we affirm the judgments of the trial court as it pertains to those assignments of error.  However, having found error prejudicial to the appellant herein in the particulars assigned and argued with respect to appellant's fourth assignment of error, we reverse the judgments of the trial court as it pertains to that assignment of error and remand for further proceedings consistent with this opinion.

*Judgments Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**