[Cite as *Cleveland v. JP Morgan Chase Bank, N.A.*, 2013-Ohio-1035.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 98656**

---

## CITY OF CLEVELAND

PLAINTIFF-APPELLANT

vs.

## JP MORGAN CHASE BANK, N.A., ET AL.

DEFENDANTS-APPELLEES

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-668608

**BEFORE:**    Celebrezze, J., Boyle, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:**    March 21, 2013

**ATTORNEYS FOR APPELLANT**

Joshua R. Cohen
Cohen, Rosenthal & Kramer, L.L.P.
700 West St. Clair Avenue
Suite 400
Cleveland, Ohio   44113

Barbara A. Langhenry
Interim Director of Law
Gary S. Singletary
Assistant Director of Law
City of Cleveland
Department of Law
601 Lakeside Avenue
Room 106
Cleveland, Ohio   44114-1077

Andris G. Nikiforovs
Community Housing Solutions
12114 Larchmere Boulevard
Cleveland, Ohio   44120

Mark A. Stanton
Short, Shepherd & Stanton
1300 Rockefeller Building
614 Superior Avenue, N.W.
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEES**

Michael N. Ungar
Isaac J. Eddington
Richik Sarkar
Isaac Schulz
Ulmer & Berne, L.L.P.
1100 Skylight Office Tower
1660 West 2nd Street
Cleveland, Ohio   44113-1448

FRANK D. CELEBREZZE, JR., J.:

{¶1} Appellant, the city of Cleveland (the "City"), brings this appeal challenging the dismissal of its complaint, which sought damages from several financial institutions involved in the creation of mortgage-backed securities using subprime mortgages from Cleveland, Ohio, real estate. The trial court dismissed the City's complaint pursuant to Civ.R. 12(B)(6), finding that the complaint failed to state a claim and citing three reasons. Here, the City challenges each of those reasons and argues that it has properly pled its claims for relief. After a thorough review of the record and discordant case law, we affirm the trial court's determination.

## I. Factual and Procedural History

{¶2} According to the City's complaint, the Cleveland housing market remained relatively flat at a time when the rest of the country experienced rapid price growth. The City alleges that, in an effort to capitalize on this boom in the housing market, several financial institutions — including appellees JP Morgan Chase Bank, N.A., Bank One, N.A., and J.P. Morgan Chase Securities, Inc. (collectively "Chase") — engaged in a practice of encouraging subprime lending in order to package mortgages together and sell them to investors in the form of mortgage-backed securities. The City alleges that these financial institutions were not concerned about the quality of the mortgages backing these securities because, as long as housing prices continued to rise, even bad loans would be covered by assets realized in foreclosures.

**{¶3}** The City's first complaint alleged that Cleveland was a market where these types of lending and securitizing practices were inappropriate because Cleveland did not experience a steady rise in housing prices. The City claims that the activities of the financial institutions, including Chase, caused a foreclosure crisis in Cleveland that damaged the City and created a public nuisance. The City asserts that Chase knew or should have known the disastrous results these actions would have on Cleveland. Specifically, the City alleges that it has incurred increased costs for fire and safety services as a result of a glut of vacant and foreclosed homes; that the practices led to greatly diminished housing prices, which resulted in huge losses in property taxes; and other costs caused by a foreclosure crisis in Cleveland. The City also brought an Ohio Corrupt Practices Act ("OCPA") cause of action alleging that Chase systematically filed false or misleading paperwork in foreclosure cases indicating that they were entitled to initiate foreclosure actions when they were not.[1]

**{¶4}** The litigation initiated by the City spawned several cases with other financial institutions removing suits to federal court. *See, e.g., Cleveland v. Ameriquest Mtge. Sec., Inc.*, 621 F.Supp.2d 513 (N.D.Ohio 2009). The appellees here are all non-diverse for federal jurisdictional purposes and could not successfully seek removal. *See* 28 U.S.C. 1332.

---

[1] The City also sought to be reimbursed for demolition costs from Residential Capital L.L.C. and GMAC Mortgage Corp., in a third cause of action. This cause was later dismissed with prejudice on July 10, 2012.

**{¶5}** The City filed an amended complaint incorporating allegations that Chase failed to properly review or process loan paperwork prior to initiating foreclosure actions — the so-called "robosigning" scandal. Chase then filed for dismissal premised on Civ.R. 12(B)(6), citing the same successful arguments raised by other defendants in the federal cases. *See Ameriquest*. The trial court allowed extensive briefing on Chase's motion to dismiss, and on November 23, 2011, granted the motion citing three reasons also found by the federal district court for the Northern District of Ohio and affirmed by the Sixth Circuit Court of Appeals. *See Cleveland v. Ameriquest Mtge. Sec., Inc.,* 615 F.3d 496 (6th Cir.2010). Regarding the public nuisance claim, the trial court found: "(1) the allegations are insufficient to demonstrate proximate cause, (2) the City's public nuisance claim is preempted by state law, and (3) the economic loss doctrine bars the City's claim." The trial court also held that the OCPA count failed for lack of sufficient proximate cause. The City then timely filed the instant appeal assigning two errors:

> I. The trial court erred in dismissing the City of Cleveland's claim for public nuisance.

> II. The trial court erred in dismissing the claim alleged by the City of Cleveland under the Ohio Corrupt Activities Act.

## II. Law and Argument

### A. Standard of Review

**{¶6}** The trial court dismissed the City's complaint pursuant to Civ.R. 12(B)(6). A motion to dismiss for failure to state a claim on which relief can be granted is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 1992-Ohio-73, 605 N.E.2d 378. It is well settled that "when a party files a motion to dismiss for failure to state a claim, all factual allegations of the complaint must be taken as true and all reasonable inferences must be drawn in favor of the nonmoving party." *Byrd v. Faber*, 57 Ohio St.3d 56, 60, 565 N.E.2d 584 (1991).

**{¶7}** While the factual allegations of the complaint are taken as true, "[u]nsupported conclusions of a complaint are not considered admitted * * * and are not sufficient to withstand a motion to dismiss." *State ex rel. Hickman v. Capots*, 45 Ohio St.3d 324, 324, 544 N.E.2d 639 (1989). In light of these guidelines, for a court to grant a motion to dismiss for failure to state a claim, it must appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975).

**{¶8}** Because factual allegations in the complaint are presumed true, only the legal issues are presented, and an entry of dismissal on the pleadings will be reviewed de novo. *Rocky River v. Lakewood*, 8th Dist. No. 90908, 2008-Ohio-6484, ¶ 6. A de novo

standard of review affords no deference to the trial court's decision, and we independently review the record. *Gilchrist v. Gonsor*, 8th Dist. No. 88609, 2007-Ohio-3903, ¶ 16.

## B. Public Nuisance

{¶9} The City's main claim was that Chase knowingly created a public nuisance through its securitizing activities. The Restatement (Second) of Torts, adopted in Ohio by *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, ¶ 8, defines a public nuisance as "an unreasonable interference with a right common to the general public." 4 Restatement of the Law 2d, Torts, Section 821B(1) (1979). The *Beretta* court went on to define "unreasonable interference" as

> those acts that significantly interfere with public health, safety, peace, comfort, or convenience, conduct that is contrary to a statute, ordinance, or regulation, or conduct that is of a continuing nature or one which has produced a permanent or long-lasting effect upon the public right, an effect of which the actor is aware or should be aware.

*Beretta* at ¶ 8, quoting 4 Restatement, Section 821B(2). At common law, this tort was used to vindicate the interference of a general right the public held, often relating to land use and brought by the state. Faulk Gray, *Alchemy in the Courtroom? The Transmutation of Public Nuisance Litigation*, 2007 Mich.St.L.Rev. 941, 953-954 (2007). Novel public nuisance causes of action have since been attempted against tobacco companies, asbestos manufacturers, fire arms manufacturers, and environmental polluters with varying degrees of success. *Id.* Recently, several plaintiffs have used this tool in global warming suits. *Id.*

**{¶10}** This tort is further broken down into two distinct types — absolute and qualified public nuisance.

> With an absolute nuisance, the wrongful act is either intentional or unlawful, and strict liability attaches notwithstanding the absence of fault because of the hazards involved (*Metzger v. Pennsylvania, Ohio & Detroit RR. Co.*, 146 Ohio St. 406, 66 N.E.2d 203 [(1946)], paragraph one of the syllabus), whereas a qualified nuisance involves a lawful act "so negligently or carelessly done as to create a potential and unreasonable risk of harm, which in due course results in injury to another." *Id*. at paragraph two of the syllabus. A qualified nuisance hinges on proof of negligence. *Id*.

*Beretta* at fn. 4. Because a qualified nuisance requires negligence, a party must show a duty owed and a breach of that duty that proximately results in cognizable injury. *Id*. at ¶ 18.

### i. Proximate Cause

**{¶11}** The City claims it has adequately pled proximate cause because Ohio law generally treats it as a question of fact and an inappropriate reason for dismissal at this stage of the litigation. *See Strother v. Hutchison*, 67 Ohio St.2d 282, 288, 423 N.E.2d 467 (1981). As the City also points out, proximate cause requires "some reasonable connection between the act or omission of the defendants and the damage the plaintiff suffered." *Queen City Terminals v. Gen. Am. Transp. Corp*., 73 Ohio St.3d 609, 618, 1995-Ohio-285, 653 N.E.2d 661. However, the tort of public nuisance only reaches so far. Ohio remains a notice pleading state,[2] but the complaint must still advance a rational basis for holding a defendant liable. *Gallo v. Westfield Natl. Ins. Co.*, 8th Dist.

---

[2] Civ.R. 8(A)(1) requires only "a short and plain statement of the claim showing that the party is entitled to relief."

No. 91893, 2009-Ohio-1094, ¶ 9, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

> Proof of a causal relationship between a defendant's action and a plaintiff's injury is essential in every tort "because the consequences of an act go endlessly forward in time and its causes stretch back to the dawn of human history." *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 235 (2d Cir.1999). Thus, the concept of proximate cause was developed to limit the liability of a wrongdoer to only those harms with a reasonable connection to the wrongdoer's actions.

*Cook Cty. v. Philip Morris, Inc.*, 353 Ill.App.3d 55, 60, 817 N.E.2d 1039 (1st Dist.2004). Where the injury is too remote or tenuous from the alleged breach, no cognizable claim exists.

> Remoteness is not an independent legal doctrine but is instead related to the issues of proximate causation or standing. *White [v. Smith & Wesson, 97 F. Supp.2d 816,*] 823 [(N.D. Ohio 2000)]; *Boston v. Smith & Wesson Corp.*, 2000 Mass. Super. LEXIS 352, 12 Mass.L.Rptr. 225, 2000 WL 1473568, at * 4, fn. 20. Thus, a complaint will fail on remoteness grounds if the harm alleged is the remote consequence of the defendant's misconduct (causation) or is wholly derivative of the harm suffered by a third party (standing).

*Beretta*, 95 Ohio St.3d 416, at ¶ 35-36.

{¶12} Here, the City alleges that the creation of a federally-encouraged pool of money to stimulate lending resulted in disastrous harm unique to Cleveland. The City claims Chase encouraged others to issue subprime loans in order to securitize those loans for profit. The City argues Chase knew or should have known that Cleveland was an inappropriate market to engage in this sort of subprime securitization process because Cleveland did not undergo robust growth in housing prices as experienced in other parts of the country.

**{¶13}** However, there are several intervening factors necessary for the harm suffered by the City to materialize. This leads to the conclusion that the City's complaint alleges an injury too remote to assert a justiciable claim.

**{¶14}** First, mortgage originators and brokers offered high-risk mortgage products to individuals with questionable credit histories. According to the City's complaint, these originators usually charged more for these types of loans, meaning they had an independent profit motive separate from any actions of the defendants. Next, potential home buyers were required to apply for, receive, and then fail to repay these home loans. The mortgage originators would seem to bear more responsibility than the banks purchasing these loans and constituted an intervening break in the causal chain. The City argues that Chase directed these originators to offer and acquire subprime loans. However, as the Sixth Circuit pointed out, directness of injury "is distinct from foreseeability and applies even if the Defendants intentionally caused the alleged course of events." *Ameriquest*, 615 F.3d 496, 502-503. Further, the directness factors cited by the *Beretta* court indicate the rationale for precluding the City's suit:

> (1) indirectness adds to the difficulty in determining which of the plaintiff's damages can be attributed to the defendant's misconduct, (2) recognizing the claims of the indirectly injured would complicate the apportionment of damages among plaintiffs to avoid multiple recoveries, and (3) these complications are unwarranted given the availability of other parties who are directly injured and who can remedy the harm without these associated problems.

*Beretta*, 95 Ohio St.3d 416, at ¶ 37, citing *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 269-270, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992).

{¶15} The trial court here found these intervening factors meant that the causal connection between the City's suffered injury and Chase's actions were not the traceable cause under the "direct relation" test set forth in *Holmes* and adopted in *Beretta*. The *Beretta* court stated that "there must be some direct relation between the injury asserted and the injurious conduct alleged." *Id.* at ¶ 37. The trial court properly applied the *Holmes* factors to the present case and arrived at a reasoned conclusion. We agree with the trial court.

{¶16} The first factor recognized by the *Beretta* court, difficulty of proof, lands in favor of dismissal. In this case, some of the damages being asserted, namely increased police, fire, and property maintenance expenses, are the City's alone, but those damages are difficult to calculate. The City claims they are no different than the damages the *Beretta* court found sufficiently pled. However, here, there is no way to separate those damages suffered from Chase's actions and those suffered as a result of other foreclosures that would have taken place regardless of those actions. Further, the reduction in property values and the subsequent loss of tax revenue are more acutely suffered by those who lost homes through foreclosure and those living in foreclosure-ravaged neighborhoods. A loss in tax revenue from decreasing property values is a derivative injury to that suffered by property owners. This implicates the third factor, "'the general interest in deterring injurious conduct' will be better served by requiring that suit be brought by more directly injured victims." *Beretta* at ¶ 42, quoting *Holmes* at 269.

{**¶17**} Similarly, the Rhode Island Supreme Court rejected a jury verdict holding paint manufacturers liable for lead contamination caused by the sale of lead-based paints. *Rhode Island v. Lead Indus. Assn., Inc.*, 951 A.2d 428, 2008 R.I. LEXIS 79 (July 1, 2008). That court found the extension of traditional product liability issues to public nuisance causes of action inappropriate where several intervening factors created a nuisance for contaminated Rhode Island houses and buildings.

{**¶18**} The City argues that the trial court erred in applying the "direct relation" test set forth in *Holmes* and adopted in *Beretta* and that this test only applies in RICO causes because that was the issue in *Holmes*.[3] However, as recognized by the U.S. Supreme Court, the proximate cause standard applied in federal RICO cases is the common law proximate cause test. *Associated Gen. Contrs. v. Cal. State Council of Carpenters*, 459 U.S. 519, 531, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983); *Holmes*, 503 U.S. at 268-269. Therefore, this is also true under traditional common law notions of proximate cause. *Herakovic v. Catholic Diocese*, 8th Dist. No. 85467, 2005-Ohio-5985, ¶ 31. This is also the reason that the City's OCPA claim fails. The same proximate cause requirements and resultant deficiencies apply to both causes of action.

{**¶19**} For support, the City points to *Beretta* and the Ohio Supreme Court's holding that claims such as the City's should survive judgment on the pleadings because Cincinnati's claims were held to be well-pled against gun manufacturers. However,

---

[3] *Holmes* dealt with Racketeer Influenced and Corrupt Organizations Act ("RICO") violations, and the OCPA was modeled on the federal RICO statutes. *Schlenker Ents., L.P. v. Reese*, 3d Dist. Nos. 2-10-16 and 2-10-19, 2010-Ohio-5308, ¶ 31.

*Beretta* has key differences. Cincinnati's claim in *Beretta* was that firearm manufacturers created or supplied a black market for the illegal sale and distribution of firearms. It was alleged that, through the direct action of the gun manufacturers, such a market existed. Here, the role of the manufacturers is played by mortgage originators and lenders who created the mortgages that would eventually poison Cleveland's housing market. The securitizing institutions, such as Chase, are at least one step removed from this process. Chase provided money to these lending institutions by purchasing or securitizing these mortgages, but it did not create the cocktail of factors that led to a glut of foreclosed homes poisoning the Cleveland housing market.

{¶20} While *Holmes* dealt with standing, and the argument here goes more to remoteness of injury, the result is the same in that the City has not provided plausible arguments in its complaint sufficient to justify holding Chase accountable where so many other factors led to the City's claimed injury.

## ii. Preemption by State Law

{¶21} The trial court also found that the City's public nuisance claim was preempted by state law, which prohibits municipalities from regulating lending. The City argues that it is acting in its proprietary capacity to redress harms it has suffered individually and that its suit does not constitute an attempt at regulating lending.

{¶22} A nuisance action is not a substitute for regulation and may not supplant existing regulations for undesirable activity. The mortgage industry is heavily regulated by state and federal bodies. However, such extensive regulation does not automatically

bar a public nuisance claim. *See Beretta.* Existing regulations in the sphere of alleged

nuisance is a factor that should be examined to determine if a claim may be brought. In

some instances, regulations may be so encompassing as to preclude a public nuisance

action, but the regulatory scheme must be examined to determine its breadth. The

existence of regulation should not, itself, preclude such a cause of action. This will often

require more evidentiary development than available when ruling on a motion to dismiss.

{¶23} In the present case, R.C. 1.63 provides that

> [t]he state solely shall regulate the business of originating, granting,
> servicing, and collecting loans and other forms of credit in the state and the
> manner in which any such business is conducted, and this regulation shall
> be in lieu of all other regulation of such activities by any municipal
> corporation or other political subdivision.

{¶24} Therefore, if the City's action constitutes some form of regulation, then its

suit may be precluded by R.C. 1.63 and the Ohio Supreme Court's decision in *Am. Fin.*

*Servs. Assn. v. Cleveland*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776. In that

case, the court determined that the City's attempt to regulate subprime lending was

preempted by the "statewide-concern doctrine."[4] The U.S. Supreme Court has also held

that the controlling effect of a money judgment stemming from common-law suits may

constitute regulation in the federal preemption context. *Riegel v. Medtronic, Inc.*, 552

U.S. 312, 324-325, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008). Further, the Court

---

[4] This doctrine provides that """a municipality may not, in the regulation of local matters, infringe on matters of general and statewide concern.""" *Id.* at ¶ 28, quoting *Reading v. Pub. Util. Comm.*, 109 Ohio St.3d 193, 2006-Ohio-2181,846 N.E.2d 840 ¶ 33, quoting *State ex rel. Evans v. Moore*, 69 Ohio St.2d 88, 89-90, 431 N.E.2d 311 (1982).

has recognized that the judicial process can be viewed as the extension of a government's regulatory power. As the court explained, "state power may be exercised as much by a jury's application of a state rule of law in a civil lawsuit," as by regulation or ordinance.

*Philadelphia v. Beretta U.S.A.*, 126 F. Supp.2d 882, 889 (E.D.Pa.2000), quoting *BMW of N. Am. v. Gore*, 517 U.S. 559, 572, 116 S.Ct. 1589, 134 L.Ed.2d 809, (1996), fn. 17.

**{¶25}** Chase successfully argued that the City's suit constitutes an attempt to regulate lending activities through the county courts rather than city council. The City argues for a plain reading of the meaning of the term "regulation" and claims that a lawsuit initiated by a municipal government in its proprietary capacity does not constitute regulation. Further, the City argues that the activity alleged, securitization of home mortgages, is not included in R.C. 1.63.

**{¶26}** The City is partially correct. The purchase, on the secondary market, of mortgages to package into securities is not evident in a plain reading of R.C. 1.63 when viewing the complaint in the City's favor. However, because the holding above regarding proximate cause is dispositive, it is of no moment. Even if the trial court erred in finding that the suit was preempted, the suit still fails to survive.

### iii. Economic Loss Rule

**{¶27}** The City has alleged purely economic damages. Economic losses "are intangible losses that do not arise from tangible physical harm to persons or property." *RWP, Inc. v. Fabrizi Trucking & Paving Co.*, 8th Dist. No. 87382, 2006-Ohio-5014, ¶ 20, citing *Columbia Gas of Ohio v. Crestline Paving & Excavating Co.*, 6th Dist. No. L-02-1093, 2003-Ohio-793; *Floor Craft Floor Covering, Inc. v. Parma Comm. Gen.*

*Hosp.*, 54 Ohio St.3d 1, 3, 560 N.E.2d 206 (1990), citing Keeton, *Prosser and Keeton on Torts*, Section 92, at 657 (5th Ed.1984). Because the damages sought were purely economic in nature, the trial court found that the public nuisance claim was barred by the economic loss rule.

> Under the doctrine of "economic loss," a party cannot recover purely economic damages in a tort action against another party based upon the breach of contractually created duties. *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701, syllabus. The reasoning behind the economic loss doctrine is that tort law is not intended to compensate parties for monetary losses suffered as a result of duties that are owed to them simply as a result of the contract. *Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Assn.* (1990), 54 Ohio St.3d 1, 7, 560 N.E.2d 206. This is because of the sense that if the tort law was "allowed to progress too far, contract law would drown in a sea of tort." *E. River S.S. Corp. v. Transamerica Delaval, Inc.* (1986), 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865, citing G. Gilmore (1974), The Death of Contract 87-94.

*Digiknow, Inc. v. PKXL Cards, Inc.*, 8th Dist. No. 96034, 2011-Ohio-3592, ¶ 2.

**{¶28}** The doctrine does not present a strong case for application to the City's suit where the duty alleged to have been breached is not related to a contractual relationship and the City has alleged particularized damages associated with decreased tax revenue and increased costs of safety services. However, a previous decision of this court clearly indicates the economic loss rule applies to qualified public nuisance claims. *Fabrizi* at ¶ 24-26. Therefore, the City's speculative economic damages are insufficient to state a claim for relief in this case.

C. The Ohio Corrupt Practices Act

**{¶29}** The City also argues that it suffered damages as a result of Chase's actions in prosecuting foreclosures where they did not have proper records under the City's OCPA claim. The trial court did not err in dismissing this claim because the City's injuries are derivative of the injuries suffered by the individuals whose properties were foreclosed upon.

**{¶30}** The City asserted a violation of Ohio's Corrupt Practices Act, R.C. 2923.32(A)(2). The City alleges that Chase obtained an interest in real property, in violation of R.C. 2923.32(A)(2), by systematically submitting false or misleading paperwork to courts in foreclosure actions, in violation of R.C. 2921.12(A)(2). R.C. 2923.31(I)(2)(a). The OCPA is modeled on the federal RICO Act, 18 U.S.C. 1961, and its body of federal law is instructive. *Schlenker Ents., L.P. v. Reese*, 3d Dist. Nos. 2-10-16 and 2-10-19, 2010-Ohio-5308, ¶ 31.

**{¶31}** As alluded to above, this cause of action in the City's amended complaint does not state a valid claim because it fails to conform its allegations to traditional notions of proximate cause. However, it also alleges an injury derivative of the injury inflicted on others.

**{¶32}** The City's OCPA claim is premised on Chase engaging in a pattern of submitting improper, misleading, or fraudulent paperwork in foreclosure actions. In fact, the City alleges that JP Morgan Chase had questionable title in 41 percent of the foreclosure actions filed in the Cuyahoga County Common Pleas Court between 2002 and 2007.

{¶33} However, the damages suffered from these questionable foreclosures were suffered by the individual mortgagors, not the City. The City cannot allege that these foreclosure actions would not have taken place. In fact, those cases where it was found that a plaintiff did not properly have an interest in the note and mortgage at the time a foreclosure action was initiated were dismissed without prejudice in order to give the plaintiff an opportunity to clear up the ownership issue and refile the foreclosure complaint. *See, e.g., Wells Fargo Bank, N.A. v. Jordan*, 8th Dist. No. 91675, 2009-Ohio-1092.

{¶34} While the City alleges that it suffered individual specialized damages from each foreclosure, as set forth in its public nuisance claim, the same cannot be said of this claim. The City does not allege that each such foreclosure would not have occurred. Any injury inflicted on the City would have occurred whether the City's allegations were true or not because the mortgagors were in default. The foreclosure process would only be delayed, not extinguished. Therefore, the injury inflicted by these actions would befall the mortgagors, not the City. In fact, several large banks have recently entered into a settlement with the U.S. government specifically addressing these allegations and have agreed to compensate mortgagors where foreclosure actions were improperly initiated or maintained. Associated Press Business Staff, *10 Banks Agree to Pay $8.5 Billion for Foreclosure Abuse*, Cleveland Plain Dealer (Jan. 7, 2013).[5] JP Morgan Chase was a party to this settlement. *Id*.

---

[5] Available at http://www.cleveland.com/business/index.ssf/2013/01/10_banks_

**{¶35}** This multiplicity of suit and liability demonstrates why the City could not recover under its OCPA claim. ""'"[T]he general tendency of the law, in regard to damages at least, is not to go beyond the first step."'" *Holmes,* 503 U.S. 258, 271-272, quoting *Associated Gen. Contrs. of Cal., Inc. v. Carpenters*, 459 U.S. 519, 534, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983), quoting *S. Pacific Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531, 533, 38 S.Ct. 186, 61 L.Ed.2d 451 (1918).

**{¶36}** While the causal connection between the City's injury and the lending and securitization activities in its public nuisance claim are less remote and may not be derivative, the injuries suffered as a result of a pattern of initiating and maintaining foreclosure actions based on false or misleading paperwork are. The City's injury of reduced property value as a result of these improper foreclosure actions is tentative at best because the foreclosure actions would have been filed anyway given that mortgagors were in default. These actions have caused no damages to the City individually that would not have befallen it without any impropriety.

---

agree_to_pay_85_billi.html (accessed Jan. 14, 2013).

## III. Conclusion

**{¶37}** The City's attempt to address severe economic conditions it alleges were created by Chase is novel and laudable, but it ultimately fails to state a valid claim. The causal connection between the securitizing institutions and the foreclosure crisis is too far removed under traditional notions of proximate cause. Even under the most lenient of pleading requirements for public nuisance claims, as set forth in *Beretta*, the City's amended complaint fails to state a valid claim under public nuisance or the OCPA. Therefore, the decision of the trial court dismissing the City's amended complaint is affirmed.

**{¶38}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., JUDGE

MARY J. BOYLE, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR